UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES P.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

CASE NO. 2:18-CV-01675-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide specific and legitimate reasons, supported by substantial evidence, to discount medical opinion evidence from Dr. Wayne Hwang, M.D.; Dr. Myrna Palasi, M.D.; Dr. Margot Schwartz, M.D.; and Dr. Tasmyn Bowes, Psy.D. Had the ALJ properly

considered these medical opinions, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's errors are therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On May 22, 2015, Plaintiff filed applications for DIB and SSI, alleging disability as of June 30, 2007. *See* Dkt. 8, Administrative Record ("AR") 16. Plaintiff subsequently amended the alleged onset date to May 22, 2015. *See* AR 16. The applications were denied upon initial administrative review and on reconsideration. *See* AR 16. ALJ Stephanie Martz held a hearing on December 5, 2017. AR 36-67. In a decision dated February 7, 2018, the ALJ determined Plaintiff to be not disabled. AR 13-35. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred: (1) by failing to provide legally sufficient reasons to discount opinion evidence from Drs. Hwang, Palasi, Schwartz, and Bowes, and Ms. Meagan Collins, LICSWA; and (2) in her assessment of Plaintiff's depression at Step Two of the sequential evaluation process. Dkt. 10, pp. 2-17. Plaintiff requests the Court remand this matter for an immediate award of benefits. *Id.* at p. 18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I. Whether the ALJ properly considered the opinion evidence.**

Plaintiff contends the ALJ failed to properly reject opinion evidence from Drs. Hwang, Palasi, Schwartz, and Bowes, and Ms. Collins. Dkt. 10, pp. 2-14.

In assessing acceptable medical sources, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

"Other medical source" testimony, which the Ninth Circuit treats as lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 51

A. Dr. Hwang

Plaintiff challenges the ALJ's assessment of the opinion evidence from Plaintiff's treating cardiologist, Dr. Hwang. Dkt. 10, pp. 12-13.

Dr. Hwang completed a medical assessment of Plaintiff's ability to do physical work-related activities on December 15, 2017. AR 1155-58. On the opinion form, Dr. Hwang noted his treatment history with Plaintiff included treating Plaintiff after his heart attack and managing his "ongoing chest pains." AR 1155. Dr. Hwang opined Plaintiff is limited to performing sedentary work. AR 1155. Dr. Hwang noted he based this opinion on Plaintiff's "ongoing" symptoms despite medical treatment for chest pains. AR 1155. Dr. Hwang determined Plaintiff can stand and walk for 2-4 hours, and sit for less than 4 hours, in an 8-hour workday. AR 1156. Dr. Hwang found Plaintiff limited in his ability to push and pull in his lower extremities due to neuropathy in Plaintiff's feet. AR 1156. Additionally, Dr. Hwang opined Plaintiff can occasionally climb, balance, stoop, crouch, kneel, and crawl because of ongoing chest pains. *See* AR 1157. Dr. Hwang determined Plaintiff has environmental restrictions caused by his impairments, including restrictions in his ability to tolerate moving machinery, temperature extremes, dust, noise, humidity, and vibrations. AR 1157. Finally, Dr. Hwang noted that while he found it "almost impossible" to answer whether Plaintiff could sustain full-time employment, he believed Plaintiff "would have unpredictable reliability" based on his conditions, such as "sudden unexplained and unexpected chest pains[.]" AR 1158.

The ALJ assigned "little weight" to Dr. Hwang's opinion because:

> (1) While [Dr. Hwang] opines the claimant is limited to sedentary work, his last treatment note from early 2017 showed that he assessed the claimant with only mild cardiac symptoms. (2) Dr. Hwang's records show no evidence of neuropathy (3) and do not support the drastic limitations he notes in this assessment.

AR 27 (numbering added).

First, the ALJ rejected Dr. Hwang's assessment because she found Dr. Hwang's last treatment note showed he assessed Plaintiff "with only mild cardiac symptoms." AR 27. An ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Regardless, the ALJ's reasons for discounting the doctor must be supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1214 n.1, 1216.

In this case, though the ALJ failed to cite or identify the date of Dr. Hwang's "last treatment note from early 2017," the parties suggest – and the Court agrees – Dr. Hwang's last treatment notes are from January 27, 2017. *See* AR 1048-52; Dkt. 10, pp. 12-13; Dkt. 11, pp. 6-7. In this treatment note, Dr. Hwang noted Plaintiff continued to experience chest pain, which Plaintiff "describe[d] as discomfort in general, tightness," and as occurring "with exertion." AR 1048. Dr. Hwang noted the chest pain occurred "even with mild activities" and Plaintiff expressed that the chest pain was "lifestyle limiting." AR 1048. After a physical examination of Plaintiff, Dr. Hwang described data from prior stress tests and echocardiograms of Plaintiff's heart. *See* AR 1051. Dr. Hwang noted, in part, that Plaintiff's last stress test from June 2016 indicated "[i]ntermediate risk," but infarct/ischemia[1] had "escalat[ed] since then." AR 1051.

Notably, in contrast to the ALJ's finding, this treatment note does not show Dr. Hwang assessed Plaintiff with "mild" cardiac symptoms. *See* AR 27, 1048-51. Rather, Dr. Hwang remarked Plaintiff was experiencing chest pain on exertion, and some aspects of Plaintiff's heart had escalated since 2016. *See* AR 1051. As Dr. Hwang did not, as the ALJ found, assess Plaintiff

---

[1] Infarct is "area of necrosis resulting from a sudden insufficiency of arterial or venous blood supply," and ischemia is a "[l]ocal loss of blood supply due to mechanical obstruction . . . of the blood vessel." STEDMANS MEDICAL DICTIONARY 443430, 457640 (2014)

with only "mild" cardiac symptoms, the Court finds this reason from the ALJ not supported by substantial evidence in the record.

Defendant, citing information from the New York Heart Association ("NYHA"), argues the ALJ properly found Plaintiff's cardiac symptoms were mild because Dr. Hwang assessed his cardiac impairment as "Class II" pursuant to NYHA criteria. Dkt. 11, pp. 6-7 (citing AR 1051). Yet the ALJ did not rely on or reference the NYHA criteria in finding Dr. Hwang assessed Plaintiff with mild cardiac symptoms. *See* AR 27. The Court cannot "affirm the decision of an agency on a ground the agency did not invoke in making its decision." *Stout v. Comm'r of Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal quotation marks and citation omitted). "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis in original) (citing *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947)) (other citation omitted). Because the ALJ did not rely on NYHA criteria in making her finding, Defendant's *post hoc* argument is without merit. The Court concludes the ALJ's first reason for rejecting Dr. Hwang's assessment is invalid.

Second, the ALJ discounted Dr. Hwang's opinion because his treatment records "show no evidence of neuropathy[.]" AR 27. As stated above, an ALJ need not accept a medical opinion that is unsupported by clinical findings. *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan*, 242 F.3d at 1149). But an ALJ cannot reject a medical opinion for lacking support where the record contains supporting treatment notes. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n. 17 (9th Cir. 2014); *see also Esparza v. Colvin*, 631 Fed. Appx. 460, 462 (9th Cir. 2015). In this case, Dr. Hwang is one of Plaintiff's treating physicians and the record contains treatment notes and

objective testing from the clinic where Dr. Hwang practices. *See, e.g.*, AR 629-870, 897-953,

1001-82. These treatment notes indicate Plaintiff experienced foot pain and numbness, and that

providers at the clinic noted the symptoms could be due to neuropathy. *See, e.g.*, AR 1026-27 ("he

is limited to walking 4 to 8 blocks before his feet go numb"; "[h]e has some neuropathic

symptoms"), 1036-37 (same), 1041 (noting diagnoses of "[p]eripheral neuropathy" and right foot

pain); *see also* AR 734, 929, 992-93, 995, 1003, 1007, 1012, 1016, 1017, 1022, 1064. Considering

the multiple treatment notes and observations from other providers at Dr. Hwang's clinic about

foot pain, foot numbness, and neuropathy, the ALJ's finding that Dr. Hwang's records show "no

evidence" of neuropathy is not supported by substantial evidence. *See Garrison*, 759 F.3d at 1013

(a treating physician's opinion cannot be rejected for lacking support if the opinion reflects and

is consistent with treatment notes in the record).

Additionally, the Court notes Dr. Hwang only cited Plaintiff's neuropathy as causing the

opined pushing and pulling limitations. *See* AR 1156. For the remainder of his opined

limitations, including his opinion that Plaintiff is limited to sedentary work, Dr. Hwang found

these limitations supported by Plaintiff's "ongoing" symptoms related to his "chest pains." *See*

AR 1155. The ALJ did not explain how Dr. Hwang's records allegedly lacking "evidence of

neuropathy" undermines his opinion about the limitations he found supported by Plaintiff's chest

pains. *See* AR 27; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)

(citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully

determine whether the ALJ's conclusions were supported by substantial evidence"). Thus, the

ALJ's second reason for rejecting Dr. Hwang's opinion is not legitimate and lacks support from

substantial evidence in the record.

Third, the ALJ determined Dr. Hwang's records "do not support the drastic limitations he notes in this assessment." AR 27. An ALJ, however, cannot reject a physician's opinion in a vague or conclusory manner. *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)); *Embrey*, 849 F.2d at 421-22. Instead, the ALJ must state her interpretations and explain why they, rather than the physician's interpretations, are correct. *See Embrey*, 849 F.2d at 421-22.

Here, the ALJ summarily stated Dr. Hwang's records do not support "the drastic limitations" he opined. *See* AR 27. But the ALJ failed to provide her interpretation of the evidence and explain how she found Dr. Hwang's records fail to support his limitations. Because the ALJ failed to explain why her interpretations, rather than Dr. Hwang's interpretations, are correct, this is not a specific, legitimate reason to reject Dr. Hwang's findings. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

For the above stated reasons, the ALJ failed to provide any specific, legitimate reason, supported by substantial evidence, to give Dr. Hwang's opinion little weight. Accordingly, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard

to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, had the ALJ properly considered Dr. Hwang's opinion, the RFC and hypothetical questions posed to the vocational expert ("VE") may have contained additional limitations. For example, the RFC and hypothetical questions may have limited Plaintiff to performing sedentary work and contained postural and environmental restrictions. *See* AR 1155, 1157. Notably, the ALJ limited Plaintiff to performing light work and did not consider any postural or environmental restrictions. *See* AR 24, 64-66. Hence, if limitations reflecting Dr. Hwang's findings were included in the RFC and the hypothetical questions posed to the VE, the ultimate disability determination may have changed. Therefore, the ALJ's failure to properly consider Dr. Hwang's opinion was not harmless and requires reversal. *See Molina*, 674 F.3d at 1117 (an error is not harmless if it "alters the outcome of the case").

B. <u>Dr. Palasi</u>

Next, Plaintiff asserts the ALJ failed to provide specific and legitimate reasons to reject opinion evidence from non-examining medical consultant, Dr. Palasi. Dkt. 10, pp. 13-14.

Dr. Palasi conducted a review of the medical evidence on April 8, 2015. AR 956-60. Dr. Palasi opined Plaintiff is markedly limited with environmental/non-exertional restrictions, postural restrictions, and in his gross or fine motor skill restrictions. AR 959. Further, Dr. Palasi determined Plaintiff is moderately limited in his ability to be aware of normal hazards and take appropriate precautions. AR 959. She found Plaintiff limited to lifting up to ten pounds, sitting for most of the day, and walking or standing for brief periods. AR 959. Dr. Palasi determined Plaintiff can frequently lift or carry small articles. AR 959. She found Plaintiff cannot stand 6 out of 8 hours in a

day or sit for prolonged periods with occasional pushing or pulling of arm or leg controls. AR 959. Overall, Dr. Palasi opined Plaintiff is limited to sedentary work. AR 959, 960.

The ALJ assigned "little weight" to Dr. Palasi's opinion for two reasons:

> (1) The opinion is inconsistent with the claimant's own statements from around this time indicating an ability to walk up to seven miles per day. (2) Dr. Palasi's opinion is also inconsistent with the findings in the treatment notes showing that the claimant did well following his heart attack and maintained sobriety.

AR 27 (numbering added).

First, the ALJ rejected Dr. Palasi's opinion because she found the opined limitations inconsistent with Plaintiff's statements "from around this time" indicating he could walk up to seven miles per day. AR 27. An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). Here, however, the record fails to support the ALJ's finding. Dr. Palasi conducted her review of the medical evidence in April 2015. *See* AR 956. The record shows that on July 14, 2015, Dr. Schwartz wrote Plaintiff "can walk 5 to 7 miles daily with his dog when feeling well," but when he experiences pain "flare" ups, he must "cut back" on his walking. AR 934. Thereafter, on September 14, 2015, Plaintiff reported that he could only "walk short distances." AR 929. Plaintiff likewise reported to a medical provider on September 27, 2015 that he could ambulate but after standing for "minutes," he feels worsening back pain and a diminished sensation in his legs and feet which make it "too challenging to stand." AR 925. Similarly, in a function report from 2015, Plaintiff reported that his back and foot pain limit his ability to walk and he needed to take breaks between one-to-ten minutes long while walking. AR 312. Plaintiff also reported in 2016 that he was "limited to walking 4 to 8 blocks before his feet go numb." AR 1026.

Hence, as the ALJ overlooked records to the contrary, substantial evidence does not support the ALJ's finding that Plaintiff reported he could walk up to seven miles per day around the time Dr. Palasi rendered her opinion. *See Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion'").

Second, the ALJ rejected Dr. Palasi's opined limitations because she found the opinion inconsistent with treatment notes showing Plaintiff "did well" after his heart attack and his maintained sobriety. AR 27. Defendant does not argue, nor does the Court find, this reason is sufficiently specific to adequately reject Dr. Palasi's opinion. *See* Dkt. 11, p. 7; *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

The ALJ failed to properly reject Dr. Palasi's opined limitations. Had the ALJ properly considered Dr. Palasi's opinion, the RFC and hypothetical questions posed to the VE may have further limited Plaintiff, such as by providing Plaintiff can perform sedentary work. Because the ultimate disability determination may have changed with proper consideration of Dr. Palasi's opinion, the ALJ's error is not harmless.

C. <u>Dr. Schwartz</u>

Plaintiff also argues the ALJ failed to properly consider four opinions from Dr. Schwartz, who is one of Plaintiff's treating physicians. Dkt. 10, pp. 7-12.

In Dr. Schwartz's first opinion, rendered on April 2, 2015, she opined Plaintiff's HIV status markedly interfered with his ability to sit and stand. AR 523. Dr. Schwartz found Plaintiff's depression markedly affected his ability to communicate in the work place. AR 523. Additionally, Dr. Schwartz determined diarrhea moderately interfered with Plaintiff's ability to sit and stand. AR 523. Dr. Schwartz opined Plaintiff could perform sedentary work. AR 524. Dr. Schwartz attached diagnostic test results and examinations of Plaintiff as support for her opinion. *See* AR 523, 525-37.

In her second opinion, provided on July 14, 2015, Dr. Schwartz opined Plaintiff would have noticeable difficulty – defined as being "unproductive and distracted from job activity" – for no more than 10% of the workday in his ability to work in coordination with or proximity to others, make simple work-related decisions, ask simple questions or request assistance, and travel in unfamiliar places or use public transportation. AR 871-72. Dr. Schwartz determined Plaintiff would have noticeable difficulty for 11-20% of the workday or workweek in several areas, including in his ability to remember locations and work-like procedures; understand and remember very short, simple instructions; and understand and remember detailed instructions. AR 871. She likewise rated Plaintiff at this level in his ability to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without special supervision. AR 871. Further, Dr. Schwartz opined Plaintiff would have noticeable difficulty for 11-20% of the workday or workweek in his ability to interact with the general public, respond appropriately to changes in the work setting, get along with coworkers or peers without distracting them or exhibiting behavior extremes, and be aware of normal hazards and take appropriate precautions. AR 872.

Dr. Schwartz found Plaintiff would have noticeable difficulty for more than 20% of the workday or workweek in his ability to perform activities within a schedule, maintain regular attendance, and/or be punctual within customary tolerances. AR 871. Similarly, she rated Plaintiff at this level of difficulty in his ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and in his ability to set realistic goals or make plans independently of others. AR 872. She opined Plaintiff would be unable to complete a normal workday and workweek without interruptions from psychological symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. AR 871.

In her third opinion form, also completed on July 14, 2015, Dr. Schwartz remarked that Plaintiff had marked difficulty completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. AR 883. She noted Plaintiff "frequently" experienced symptoms that interfere with attention and concentration. AR 884. Moreover, Dr. Schwartz opined Plaintiff would be unable to perform or be exposed to fast paced tasks, work hazards, and routine, repetitive tasks at a consistent pace. AR 884. She determined Plaintiff could walk up to 5 miles without pain, continuously sit and stand for 2 hours at a time, and sit and stand/walk for 4 hours each in an 8-hour workday. AR 895. Dr. Schwartz opined Plaintiff may need six unscheduled breaks to rest during an average workday, for 30 minutes each time. AR 884. Plaintiff could frequently lift and carry 10 pounds or less and rarely lift and carry 20 pounds or more. AR 884-85. In addition, Dr. Schwartz opined Plaintiff would have noticeable difficulty for no more than 10% of the workday in several areas, including his ability to understand, remember, and carry out very short and simple instructions; deal with normal work stress; and respond appropriately to changes in a routine work setting. AR 885-86. Dr. Schwartz determined Plaintiff would have noticeable difficulty for more than 20% of the workday in his ability to complete a normal workday and

workweek without interruption from psychological symptoms, and perform routine repetitive work at a consistent pace without an unreasonable number and length of rest periods. AR 885.

In her final assessment, rendered on November 7, 2017, Dr. Schwartz again opined Plaintiff was limited to performing sedentary work. AR 1147. She wrote that she based her assessment on Plaintiff's "mechanical low back pain, neuropathy, HIV with chronic fatigue, coronary artery disease, [and] depression." AR 1147. Dr. Schwartz opined Plaintiff could stand and walk for less the 2 hours in an 8-hour workday due to his back pain, neuropathy, HIV with fatigue, coronary artery disease, and depression. AR 1148. She determined that, based on these conditions, Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort. AR 1148. Similarly, Dr. Schwartz found Plaintiff limited in his lower and upper extremities due to "chronic pain, fatigue, and neuropathy," which she wrote "limit repetitive movements." AR 1148. Dr. Schwartz opined Plaintiff could never climb or crouch, though he could occasionally balance, stoop, kneel, crawl, and handle/manipulate. AR 1149. Plaintiff was limited in his ability to feel and be exposed to heights, moving machinery, temperature extremes, chemicals, noise, fumes, humidity, and vibrations. AR 1149. Dr. Schwartz noted at the end of her opinion that, in addition to his physical limitations, Plaintiff "has great difficulty concentrating and focusing, which has [sic] been a barrier for him working." AR 1150.

The ALJ gave "little weight" to all of Dr. Schwartz's opinions for five reasons:

> (1) Dr. Schwartz states that the claimant is limited to sedentary work and has significant mental health problems with difficulty with understanding, memory, concentration, social functioning, and adaptation. However, her treatment notes contain no objective findings regarding the claimant's mental health. (2) Notably, Dr. Meis's consultative evaluations done a month after Dr. Schwartz's [mental assessment in July 2015] show the claimant to have intact concentration, persistence, pace, and memory, and no significant mental health impairment. (3) Similarly, Dr. Schwartz's claim in April 2015 opining that the claimant is limited to sedentary work is not consistent with his reported activity around that time indicating that he was walking up to 7 miles per day. (4) Dr. Schwartz's opinion in

> November 2017 finding that the claimant was limited to sedentary work is based on mechanical lower back pain and neuropathy, however, he reported improvement in his back pain in 2016 and has not had any ongoing treatment for this issue. As discussed in detail above, neuropathy is not a medically determinable impairment in this case and Dr. Schwartz's own treatment notes show that she was not even sure what his diagnosis was with regard to his feet. While Dr. Schwartz opined that the claimant needed to alternate between sitting and standing to relieve pain, subsequent records show no ongoing complaints of back or foot pain after 2016. (5) Although Dr. Schwartz is a treating source, her opinions are not consistent with her own treatment notes. While she opines that the claimant has fatigue and concentration problems that limit his work capacity, her own treatment notes show no such complaints and contain no testing for concentration problems.

AR 27 (numbering added).

First, the ALJ rejected Dr. Schwartz's opinions because she found the doctor's treatment notes contain "no objective findings" on Plaintiff's mental health. AR 27. As previously stated, an ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citation omitted). But the ALJ's finding here overlooks observations Dr. Schwartz made about Plaintiff's mental health. On December 11, 2014, Dr. Schwartz noted Plaintiff "had feelings of hopelessness," trouble sleeping, and missed some cardiac rehabilitation appointments. AR 747. Dr. Schwartz diagnosed Plaintiff with depression, prescribed medication, and referred him for a psychiatric consult. AR 747, 748. At an appointment on January 5, 2015, Dr. Schwartz noted Plaintiff did not feel like the medication was helping his depression. AR 744, 745. Although Dr. Schwartz suggested increasing the dosage, Plaintiff preferred to stop taking the medication. AR 744, 745. Plaintiff continued to have trouble sleeping and getting out of bed and would not check his voicemail. AR 744. Dr. Schwartz also observed Plaintiff was "[a]ngry and frustrated" with his apartment manager. AR 744. At this visit, Dr. Schwartz found Plaintiff had an anxious affect. AR 746. On July 14, 2015, the day Dr. Schwartz completed two of her evaluation forms, she noted Plaintiff "still feels low" and was seeing a therapist. AR 934. As the record contains mental health observations from Dr. Schwartz, the ALJ's determination that Dr.

Schwartz made "no objective findings" on Plaintiff's mental health lacks support from substantial evidence in the record. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ erred in finding a source's opinion was supported by "little explanation" where the ALJ overlooked relevant notes).

Second, the ALJ discounted Dr. Schwartz's opinions because the consultative evaluation completed by Dr. Peter Meis, M.D, one month after Dr. Schwartz's mental health assessments showed Plaintiff with "intact" findings and "no significant mental health impairment." AR 27. An ALJ may also discount an opinion which is inadequately supported by, or inconsistent with, the record. *See Batson*, 359 F.3d at 1195. Yet as previously stated, a conclusory finding by the ALJ is insufficient to reject a physician's opinion. *See Embrey*, 849 F.2d at 421-22.

In this case, the ALJ noted that Dr. Meis's evaluation showed Plaintiff with "intact" findings and "no significant mental health impairment." AR 27. Nonetheless, the ALJ failed to offer any rationale as to how Dr. Meis's observations undermine Dr. Schwartz's opinions. The ALJ "merely states" these facts about Dr. Mesis's evaluation "point toward an adverse conclusion" but "makes no effort to relate any of these" facts to "the specific medical opinions and findings [she] rejects." *Embrey*, 849 F.2d at 421. "This approach is inadequate." *Id.* Without more, this is not a specific, legitimate reason, supported by substantial evidence in the record, to discount Dr. Schwartz's opinions. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review").

Further, by rejecting Dr. Schwartz's opinions in light of findings from Dr. Meis, the ALJ gave greater weight to Dr. Meis's evaluation without explanation as to why it is more persuasive than Dr. Schwartz's opinions. The fact Dr. Schwartz's opinion is inconsistent with Dr. Meis's

opinion shifts the standard of review for giving less weight to Dr. Schwartz's opinion from clear and convincing to specific and legitimate reasons, but does not eliminate the need for the ALJ to provide a proper reason to reject the opinion. *See Garrison*, 759 F.3d at 1012-13 (an ALJ errs when she rejects a medical opinion or assigns it little weight when asserting without explanation another medical opinion is more persuasive). Therefore, in all, the ALJ's second reason for rejecting Dr. Schwartz's opinions is insufficient because it is conclusory and gave preference to Dr. Meis's evaluation without explanation.

Third, the ALJ gave little weight to Dr. Schwartz's opinions because she found Dr. Schwartz's opinion that Plaintiff is limited to sedentary work inconsistent with his reports in 2015 that he was walking up to seven miles per day. AR 27. Although the record indicates Plaintiff sometimes reported walking several miles per day, Plaintiff – as explained with respect to Dr. Palasi – reported throughout 2015 that he could only walk "short distances" due to pain. *See* AR 929; *see also* AR 312, 934, 1026. Because the ALJ's finding that Plaintiff reported he could walk up to seven miles per day failed to consider records indicating otherwise, the ALJ's reasoning is not supported by substantial evidence.

Fourth, the ALJ rejected Dr. Schwartz's opinions because, while Dr. Schwartz opined that Plaintiff was limited to sedentary work and needed to alternate between sitting and standing due to lower back pain and neuropathy, the ALJ found these conditions unsupported by the record. An ALJ may reject a treating physician's opinion due to an "inconsistency with the treatment record." *Green v. Berryhill*, 731 Fed. Appx. 596, 598 (9th Cir. 2018) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014)). Nonetheless, the ALJ's finding here is not legitimate. The ALJ's reasoning implies that Dr. Schwartz opined Plaintiff could perform sedentary work based *only* due to lower back pain and neuropathy. *See* AR 27. Dr. Schwartz expressly stated, however, that she

also based these limitations on Plaintiff's HIV with chronic fatigue, coronary artery disease, and depression. AR 1147-48. These conditions are documented throughout Plaintiff's treatment record by Dr. Schwartz and others at her clinic through 2017. *See, e.g.*, AR 740-41, 744, 929, 934, 939-40, 1002-03, 1006 1016-17, 1027,1050-51 ,1053, 1055, 1064. Moreover, while the ALJ wrote that she found neuropathy to be not medically determinable, the Court notes that – as discussed above – treatment notes from Dr. Schwartz and others at her clinic frequently indicate that Plaintiff experienced foot pain, numbness, and neuropathic symptoms. *See, e.g.*, AR 734, 929, 992-93, 995, 1003, 1007, 1012, 1016-17, 1022, 1026-27, 1036-37, 1064.

Hence, given that Dr. Schwartz opined Plaintiff is limited to sedentary work due conditions in addition to his back pain and neuropathy, the ALJ's fourth reason for rejecting Dr. Schwartz's opinions is not legitimate. *See Garrison*, 759 F.3d 995, 1017 n.23 (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)) (an ALJ is "not permitted to 'cherry pick'" the record to support a denial of benefits).

In the fifth and final reason for discounting Dr. Schwartz's opinion, the ALJ remarked that while Dr. Schwartz opines Plaintiff "has fatigue and concentration problems that limit his work capacity, her own treatment notes show no complaints and contain no testing for concentration problems." AR 27. Again, the ALJ's finding lacks support from substantial evidence in the record. Dr. Schwartz observed on several occasions that Plaintiff experienced fatigue and difficulty sleeping at night. *See, e.g.*, AR 744, 747, 750, 1001-02, 1006-07, 1011-12, 1016-18, 1021-23, 1027.

Further, the Court acknowledges that ALJ accurately noted that Dr. Schwartz's treatment notes contain no testing for concentration problems. Nevertheless, Dr. Schwartz expressly opined that she found Plaintiff has difficulties in concentration due to his difficulty with household

chores, brushing his teeth, and shaving. *See* AR 883; *see also* AR 873 (Dr. Schwartz noting Plaintiff is "limited [in] his ability to . . . complete simple tasks. He is having difficulties completing simple tasks at home."). Thus, considering the context of Dr. Schwartz's opined limitations and the errors above, the Court finds the ALJ's final reason for rejecting Dr. Schwartz's opinion is not based on substantial evidence in the record as a whole. If the ALJ intends to reject these limitations on remand due to a lack of support from objective testing, the ALJ is directed to explain her reasoning in light of Dr. Schwartz's notes that she based these limitations on Plaintiff's difficulty with household chores and self-care. *See* AR 873, 883; *see also Embrey*, 849 F.2d at 421-22 (citation omitted) ("[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").

The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Schwartz's opined limitations. The RFC and hypothetical questions posed to the VE may have contained greater limitations with proper consideration of Dr. Schwartz's opinions. For example, these items may have limited Plaintiff to performing sedentary work. *See* AR 524, 1147. The RFC and hypothetical questions may have also contained limitations reflecting Dr. Schwartz's opined mental restrictions. *See* AR 871-73, 883-86. Hence, given that the ultimate disability determination may have changed with proper consideration of Dr. Schwartz's opinions, the ALJ's errors are not harmless.

D. Dr. Bowes

Plaintiff contends the ALJ erred in her assessment of the medical opinion evidence from examining psychologist Dr. Bowes. Dkt. 10, pp. 3-5.

Dr. Bowes completed a psychological/psychiatric evaluation of Plaintiff on March 22, 2017. *See* AR 1083-94. Dr. Bowes' evaluation included reviewing a prior psychological evaluation

and conducting a clinical interview, mental status examination, trail-making tests, Beck Depression Inventory ("BDI"), and Beck Anxiety Inventory ("BAI"). *See* AR 1083-94. After stating her clinical findings, Dr. Bowes diagnosed Plaintiff with persistent depressive disorder, moderate-severe severity. AR 1085. Dr. Bowes opined Plaintiff has moderate limitations in four areas of basic work activities: the ability to understand, remember, and persist in tasks by following very short and simple instructions; the ability to learn new tasks; the ability to perform routine task without special supervision; and the ability to adapt to changes in a routine work setting. AR 1086. Additionally, Dr. Bowes found Plaintiff markedly limited in his ability to understand, remember, and persist in tasks by following detailed instructions, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting. AR 1086. Dr. Bowes found Plaintiff markedly limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. Finally, Dr. Bowes determined Plaintiff is severely limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 1086. In all, Dr. Bowes rated Plaintiff's severity based on his mental impairments at the marked level. AR 1086.

The ALJ assigned "little weight" to Dr. Bowes' opinion for four reasons:

> (1) [Dr. Bowes'] opined limitations are inconsistent with her mental status evaluations of the claimant showing that he had adequate eye contact, fair grooming, was cooperative, and performed within normal limits on mental status testing. (2) While Dr. Bowes noted that the claimant was "depressed" she provided no explanation as to how this finding translated to marked and severe limitations. (3) There are minimal contemporaneous treatment notes from around the time of this evaluation, but the records overall show few notations by Dr. Schwartz, who saw the claimant regularly, of any mental health symptoms or concerns. If the claimant's functioning was at the marked level, it stands to reason that Dr. Schwartz would express some concern over his mental functioning. (4) Instead, there are no treatment notes documenting any concern about the claimant's mental health until Dr. Kang's notes in September 2017, which have few objective findings other than his report that he was not doing much. However, during that time, the claimant reports that he was still engaging in social activities with groups of friends.

AR 22-23.

First, the ALJ gave Dr. Bowes' opinion little weight because she found it inconsistent with the normal results on Dr. Bowes' mental status examination. AR 22. The ALJ's reasoning again lacked sufficient explanation. Although the ALJ accurately described some findings from the mental status examination, she failed to explain how these findings undermine Dr. Bowes' opined limitations. *See* AR 22. As such, this reason is not sufficiently specific to reject Dr. Bowes' opinion. *Embrey*, 849 F.2d at 421 (an ALJ errs when he states a medical opinion is contrary to objective findings without further explanation).

Moreover, the ALJ's description of Dr. Bowes' evaluation overlooks abnormal observations she made which may support her opined limitations. For example, the clinical interview Dr. Bowes performed revealed that Plaintiff experienced physical and mental abuse in his childhood. *See* AR 1083. Plaintiff's BDI indicated severe depression, and his BAI indicated moderate anxiety. AR 1085. In her clinical findings, Dr. Bowes noted that Plaintiff had a history of "chronic" depressive episodes over the last 2-3 years. AR 1085. Plaintiff reported sadness, tearfulness, anhedonia, lack of energy and motivation, sleep disturbance, hopelessness, worthlessness, social isolation, irritability, and passive suicidal ideation. AR 1085. Dr. Bowes also observed that Plaintiff experienced anxiety, finding him "easily overwhelmed by tasks/performance." AR 1085. In addition, Dr. Bowes noted that Plaintiff experienced difficulties with concentration, and Plaintiff's mood in the mental status examination was depressed. AR 1085, 1087.

As the ALJ failed to provide her interpretation of the evidence and overlooked supporting findings, the ALJ's first reason for rejecting Dr. Bowes is not specific and legitimate nor supported by substantial evidence in the record. *See Burrell*, 775 F.3d at 1140; *see also Julie F.*

*K. v. Berryhill*, 2019 WL 1429611, at *5 (C.D. Cal. Mar. 29, 2019) (an ALJ errs when she faults a physician "for failing to provide supporting objective evidence, but a review of [the record] shows documented findings supporting" the physician's opinion).

Second, the ALJ discounted Dr. Bowes' opinion because, although Dr. Bowes noted Plaintiff was "depressed," Dr. Bowes "provided no explanation as to how this finding translated to marked and severe limitations." AR 23. An ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111-12 (internal quotation marks omitted) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996)). But "opinions in check-box form can be entitled to substantial weight when adequately supported." *Neff v. Colvin*, 639 Fed. Appx. 459 (9th Cir. 2016) (internal quotation marks omitted) (citing *Garrison*, 759 F.3d at 1013).

In this case, Dr. Bowes provided her opinion on a Washington State Department of Social and Health Services evaluation form. *See* AR 1083-94. Dr. Bowes' opinion form included – as described above – notes from her clinical interview, Plaintiff's scores from the BDI and BAI, and Dr. Bowes' clinical findings. *See* AR 1083-94. As Dr. Bowes' opinion included testing and relevant results, the ALJ's finding that Dr. Bowes "provided no explanation" for the opined limitations is not supported by substantial evidence. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (clinical interviews "are objective measures"); *Bayliss v. Colvin*, 2014 WL 4384076, at *3-4 (W.D. Wash. Sept. 4, 2014) (ALJ erred in finding an examining physician's opinion lacked support from objective evidence where the ALJ failed to consider the BAI score, BDI score, and the physician's clinical findings); *Smith v. Astrue*, 2012 WL 5511722, at *6 (W.D. Wash. Oct. 25, 2012) (ALJ improperly rejected an examining physician's opinion as a "check-off"

report where the physician "conducted a clinical interview, [and] report[ed] his findings and observations" in the report).

Third, the ALJ rejected Dr. Bowes' opinion because Dr. Schwartz, who Plaintiff was seeing "regularly," recorded "few notations" of mental health symptoms or concerns. AR 23. An ALJ can discount a medical opinion if there are inconsistencies between that opinion and contemporaneous treatment records. *Parent v. Astrue*, 521 Fed. Appx. 604, 608 (9th Cir. 2013) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)). But as previously explained, "an ALJ errs when [she] rejects a medical opinion or assigns it little weight while . . . asserting without explanation that another medical opinion is more persuasive[.]" *Garrison*, 759 F.3d at 1012-13. Here, the ALJ failed to explain why she found Dr. Schwartz's treatment notes more persuasive than Dr. Bowes' objective tests and opinions about Plaintiff. *See* AR 23; *Garrison*, 759 F.3d at 1012-13. Further, the record reflects Plaintiff only saw Dr. Schwartz on two occasions in 2017 and both times were prior to Dr. Bowes' evaluation. *See* AR 1001-05, 1006-10. Thus, the record does not necessarily reflect Dr. Schwartz was "regularly" seeing Plaintiff at this time or that Dr. Bowes' opinion necessarily contradicts Dr. Schwartz's treatment notes. Accordingly, given the ALJ's lack of explanation and the context of Dr. Schwartz's treatment notes, the ALJ erred. *See Reddick*, 157 F.3d at 725 (an ALJ can provide specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings").

Fourth, the ALJ assigned little weight to Dr. Bowes' opinion because treatment notes from mental health provider Dr. Supriya Kang, M.D., in 2017 contain "few objective findings other than [Plaintiff's] report that he was not doing much." AR 23. While an ALJ can discount an opinion for conflicting with contemporaneous treatment records, *see Parent*, 521 Fed. Appx.

at 608 (citation omitted), the ALJ's determination here lacks support from the record. Dr. Kang made various objective findings relevant to Plaintiff's mental health. At his psychiatric intake appointment with Dr. Kang on September 7, 2017, Dr. Kang observed Plaintiff had spontaneous speech, a constricted affect, and a depressed mood. AR 1101-02. Likewise, on September 28, 2017, Dr. Kang noted that Plaintiff reported that he began making his bed daily but "only shower[ed] once a week." AR 1098. Dr. Kang remarked that Plaintiff was tired in the daytime and sometimes took two naps per day. AR 1098. On November 2, 2017, Dr. Kang wrote that Plaintiff again reported difficulty sleeping. AR 1096. He observed Plaintiff with spontaneous speech, a constricted affect, and an anxious/tense mood. AR 1097. Also, in direct contrast to the ALJ's finding that there were "few" findings on Plaintiff's mental health in 2017, Plaintiff's therapist Ms. Collins' documented several abnormal mental health observations throughout 2017. *See, e.g.*, AR 1116 (feelings of sadness, hopelessness, worthlessness; loss of concentration and focus; increased isolation; passive suicidal ideation), AR 1120 (anxious, irritable mood), AR 1122 (anxious, depressed mood), AR 1124 (irritable, anxious, and depressed mood), AR 1142-43 (passive suicidal ideation; depressed mood). As such, the ALJ's determination that treatment notes contemporaneous to Dr. Bowes' opinion contained "few objective findings" is not supported by the record.[2] *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed [her] evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. [Her] paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

---

[2] Further, to the extent the ALJ intended to reject Dr. Bowes' opinion due to inconsistencies about Plaintiff's reported activities to Dr. Kang, the Court finds the ALJ failed to explain how any purported inconsistencies in Dr. Kang's notes undermine Dr. Bowes' opinion. *See* AR 23; *Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

The ALJ failed to provide any specific, legitimate reason, supported by substantial evidence, for giving Dr. Bowes' opinion little weight. Had the ALJ properly considered this opinion, she may have included mental limitations in the RFC and hypothetical questions posed to the VE. *See* AR 1086. Thus, the ALJ's errors are not harmless.

E. <u>Ms. Collins</u>

Plaintiff further challenges the ALJ's consideration of opinion evidence from Ms. Collins, Plaintiff's treating therapist. Dkt. 10, pp. 5-7.

The Court has concluded the ALJ harmfully erred in considering opinion evidence from Drs. Hwang, Palasi, Schwartz, and Bowes. As this case must be remanded, the Court declines to consider whether the ALJ harmfully erred in her consideration of the opinion from Ms. Collins. Rather, the Court instructs the ALJ to re-evaluate Ms. Collins' opinion on remand as necessitated by her re-evaluation of the opinions from Drs. Hwang, Palasi, Schwartz, and Bowes.

**II. Whether the ALJ properly evaluated Plaintiff's depression at Step Two.**

Plaintiff argues the ALJ failed to properly consider his depression at Step Two of the sequential evaluation process. Dkt. 10, pp. 14-18.

At Step Two, the ALJ found Plaintiff's depression to be a non-severe medically determinable impairment. *See* AR 20-23. The ALJ discussed and discounted the opinion evidence from Dr. Bowes and Ms. Collins at Step Two. AR 22-23. Both Dr. Bowes and Ms. Collins opined Plaintiff has depression and related limitations in the workplace. *See* AR 1083-94, 1151-54. The Court has determined, however, the ALJ harmfully erred in her treatment of Dr. Bowes' opinion, and has directed the ALJ to re-evaluate this opinion, and Ms. Collins' opinion, on remand. Because Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of the opinion evidence may impact her assessment of

Plaintiff's impairments, the ALJ shall reconsider Plaintiff's severe impairments – including his depression – at Step Two.

**III. Whether an award of benefits is appropriate.**

Lastly, Plaintiff requests the Court remand this case for an award of benefits. Dkt. 10, p. 18.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

In this case, the Court has determined the ALJ committed harmful error and has directed the ALJ to re-evaluate the opinion evidence from Drs. Hwang, Palasi, Schwartz, and Bowes, and Ms. Bowes, and Plaintiff's impairments at Step Two. Because outstanding issues remain regarding the medical evidence, Plaintiff's severe impairments, the RFC, and Plaintiff's ability to perform jobs existing in significant numbers in the national economy, remand for further consideration of this matter is appropriate.

CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 1st day of August, 2019.

David W. Christel
United States Magistrate Judge